◼ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PHILLIP AMATO, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Queens County (Friedmann, J.), rendered September 9, 1988, convicting him of arson in the third degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is affirmed, and the matter is remitted to the Supreme Court, Queens County, for further proceedings pursuant to CPL 460.50 (5).

Contrary to the defendant's contention, we find that his guilt of arson in the third degree was established beyond a reasonable doubt. The evidence adduced at trial established that on the night of April 20, 1987, a fire broke out at 171-27 Gladwin Avenue, Queens, a private one-family residence which had recently been leased by its owner to the City of New York for the purpose of housing foster children. The defendants Phillip and Rita Amato and James Raffa owned homes on Gladwin Avenue, and were active in neighborhood

associations formed to oppose the city's plans. To this end they succeeded in obtaining a temporary restraining order enjoining the city from occupying the house, but had also, on several occasions prior to the actual fire, threatened to burn the house down.

The evidence further showed that on the night of the fire, as the codefendant Rita Amato gathered with her codefendants and other neighbors on the lawn across from the subject premises, she helped to lure the city's security guard from the home, told an uninvolved neighbor to stay inside his home, and then telephoned a television news station to tell them the house might be burned down. The defendant Phillip Amato, after directing Michael Scotto and another neighbor to act as lookouts, joined with the codefendant James Raffa, who was concealing a bottle of clear liquid under his jacket, and the codefendant Ugo Serrone, and walked into the rear yard of the property adjoining the subject house. The sound of glass breaking was heard shortly thereafter, and the house was soon filled with smoke and flames. As the building was blazing, the defendants stood watching from across the street, some toasting the fire with glasses of liquor. An investigation revealed that the fire was intentionally set by use of a flammable liquid.

Viewing this circumstantial evidence in the light most favorable to the People (see, People v Contes, 60 NY2d 620), we conclude that the facts from which the jury could infer the defendant's guilt were inconsistent with his innocence and excluded to a moral certainty every other reasonable hypothesis but guilt (see, People v Betancourt, 68 NY2d 707; People v Giuliano, 65 NY2d 766). Moreover, upon the exercise of our factual review power, we are satisfied that the verdict was not against the weight of the evidence (see, CPL 470.15 [5]).

The codefendants Michael Scotto and Ugo Serrone waived their right to a jury trial and the remaining defendants moved for severance. Contrary to the defendant's contention on appeal, we do not find that the court's denial of his motion for a severance was an improvident exercise of discretion, or that the joint trial violated his rights under the Confrontation Clause. The evidence against all five defendants, who were charged with acting in concert, was essentially identical, and the defendant failed to proffer the requisite "cogent reasons" (People v Bornholdt, 33 NY2d 75, 87, cert denied sub nom. Victory v New York, 416 US 905) to warrant separate trials (see, People v Mahboubian, 74 NY2d 174, 183). Moreover, we find that under the circumstances of this case, the trial court

exercised its discretion within permissible legal limits when it ordered a joint bench and jury trial, and that the procedure did not prejudice the defense (see, People v Wallace, 153 AD2d 59; see also, People v Ricardo B., 73 NY2d 228).

The defendant also contends that the court violated his constitutional right to counsel of his own choice when it disqualified the law firm he had originally retained, after a member of that firm testified at a pretrial hearing. We disagree.

The right to counsel of one's own choosing is not absolute but may be overridden where necessary (see, S & S Hotel Ventures Ltd. Partnership v 777 S. H. Corp., 69 NY2d 437; People v Arroyave, 49 NY2d 264). One restriction on the right is the so-called "advocate-witness rule". This rule is embodied in the provision of Code of Professional Responsibility DR 5-101 (B) and DR 5-102, and generally requires counsel to withdraw from employment when it appears that he or a member of his firm will be called as a witness to testify regarding a disputed issue of fact (see, e.g., United States v DeFazio, 899 F2d 626; United States v Cunningham, 672 F2d 1064).

In this case, the defendant claims that a member of the law firm which he retained to defend him at trial had contacted investigators and had advised them of his representation of the defendant, and that these investigators nevertheless continued to question the defendant. The attorney in question testified at the pretrial hearing on this issue. Although the court granted the defendant's motion to suppress to the extent that it was premised on this argument, the People indicated an intent to use the illegally obtained statement in order to impeach the defendant should he testify at trial.

Under these circumstances, the trial court was understandably concerned with the prospect that the propriety of the defendant's incriminating statements might still surface as an issue at trial, leading to the possibility that the defendant's trial counsel would have to testify. The propriety of the trial court's ruling was later borne out when a member of the law firm in question in fact testified at the trial. Under these circumstances, we conclude that the trial court did not err or improvidently exercise its discretion in disqualifying the defendant's attorney.

We have examined the defendant's remaining contentions and find them to be without merit. Bracken, J. P., Kooper, Sullivan and O'Brien, JJ., concur.